IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION

CHRIS BAKER                                                                                        PLAINTIFF

v.                                          NO. 4:22-cv-1222 JM

THE BOARD OF TRUSTEES OF
THE UNIVERSITY OF ARKANSAS                                                    DEFENDANT

ORDER

Pending is a motion for summary judgment filed by the Board of Trustees of the University of Arkansas on the claims of sex and age discrimination brought by former employee, Chris Baker. (Doc. No. 12). Baker responded (Doc. No. 16), and the Board replied (Doc. No. 19). For the reasons stated below, the motion for summary judgment is granted.

Undisputed Facts

Chris Baker, a 62-year old male, was employed as a cardiac sonographer at the University of Arkansas for Medical Sciences (UAMS) in the cardiac non-invasive lab beginning in in July of 2010. He held a supervisory role in the lab, but also provided instruction, evaluation, and training for diagnostic sonography students through UAMS's College of Health Professions. The students rotated through the lab to practice their skills and receive feedback from Baker and other UAMS sonographers. In June of 2020, a female student complained to Associate Dean Tina Maddox that Baker asked the students to remove their bras and do practice scans on one another. Employee Relations met with Baker regarding the complaint, and he stated, "In retrospect, I probably should not have said, 'practice with anyone who will take their shorts off and scan them for practice.'" (Doc. 15, ¶ 10). As part of the informal resolution process, Baker was told to complete additional sexual harassment training, and the students had their practice rotation moved to a different location where they would not have contact with Baker.

Two years later, nurse Sarah Amundson raised concerns about Baker's behavior toward sonography students and female patients. Baker's supervisor, Allison Lord, met with Amundson on July 15, 2022. Amundson said that she had been told that Baker took female sonography students into dark breakrooms to review echocardiograms on a laptop, which included touching them on the chest to show them where the leads go. She also told of behavior she thought was inappropriate with a young female patient. On April 14, 2022, another sonographer had already performed an ultrasound on the patient, but Baker came in and did it again when the first sonographer stepped out. Then Baker stuck two fingers down the back the patient's throat, a method other sonographers confirmed that he used often. Baker made a comment about "bouncing his fingers off her tonsils" in the presence of three male doctors. After the test had been conducted and the patient was in recovery, Baker returned and removed the leads from the bare-chested female himself rather than leaving it for Amundson, who was her nurse.

After Amundson's complaint was filed with human resources, the Title IX coordinator, Michelle Zengulis, reached out to the sonography students in Baker's rotation on or about July 25, 2022. They reported that they felt Baker was inappropriate when he asked them to view echocardiograms in the dark break room and touched them. The students reported not wanting to make a formal complaint and were reassigned to another site for their rotation. One student did file a written statement. She reported that on June 16, 2022 Baker took her to a room with the lights off to show her echocardiogram images on a laptop. She stated that he kept moving closer to her she tried to move away, that he touched her on at least thirty times on her knee, foot, shoulder and arm. The student said she was uncomfortable during the whole encounter, which lasted about ninety minutes, and she wanted to say something to him about not touching her anymore but did not because she was concerned that it could impact her evaluations or her

2

career. She reported being very anxious and that her stomach hurt following the interaction.

Baker was placed on administrative leave on August 23, 2022 pending the outcome of the formal sexual harassment and unprofessional behavior investigation. Employee Relations conducted interviews with Baker, two other UAMS cardiac sonographers who worked with Baker, two cardiology physicians, Allison Lord, and reviewed the student's written statement.

Hannah Ramberg and Marie Harris-Bell are the two female sonographers who were interviewed. They told of incidents where they thought Baker targeted young female patients for procedures, checking the schedule and coming in early or over the department's lunch break. They also said they were told by several young female students that Baker made them feel uncomfortable sitting close to them (so that his inner thigh touches their inner thigh) while reviewing images on laptops in dark rooms. The students reported than a UAMS instructor had told them that Baker was "handsy" but harmless. Ramberg also expressed concern for patient safety after Baker had left a non-verbal patient in a room for forty-five minutes, letting her oxygen tank get low, which the sonographer believed he had done in his haste to grab the young female patient that was next on the schedule. Harris-Bell said she had seen him on two occasions put his fingers in a female patient's mouth to check their throats for numbness and then turn to a male tech with a smile and a wink.

The two doctors who were interviewed, both of whom were male, reported that they had never seen Baker do anything inappropriate. Dr. Srikanth Vallurupalli also stated he does not interact with Baker when his working with patients. He stated that Amundson came to him initially with her complaint and he had directed her to Allison Lord. Dr. Tushar Tarun said he had not heard of any inappropriate behavior by Baker; he had only witnessed Baker interact with patients or students two or three times. Baker's supervisor, Allison Lord, stated that she was not

aware of any allegations of inappropriate behavior by students or staff against him prior to being approached by Amundson. She also stated that Baker was a manager and not expected to do sonographies on a daily basis, though he had told her he often did them to keep his skills up.

At the end of the investigation, the Employee Relations investigator concluded that Baker's behavior had caused staff and students to become uncomfortable and that students feared retaliation. The investigator found under the totality of the circumstances that Baker had engaged in conduct that was "severe, pervasive, and objectively offense" towards students in violation of UAMS's sexual harassment policy. The investigator also concluded that some of Baker's patient interactions were unprofessional and unsafe. Baker was notified on September 22, 2022 that his employment was terminated effective August 22, 2022.

While Baker does not dispute that this is what the various witnesses said, he denies that he that he ever engaged in inappropriate behavior with students or patients. He says the investigation was unfair for not interviewing several other witnesses he identified and who would have spoken in his favor. He attached an affidavit of one of the several witnesses he named that had not been interviewed, Ashleigh Arendall, a female sonographer who stated she never saw Baker act inappropriately, never had a student or patient complain to her about his behavior, and that he was extremely professional. She also said it was normal to review echocardiograms in a darkened room as Baker had done with students. Arendall expressed the opinion that "some people were simply uncomfortable with a male performing in the role of a cardiac sonographer, particularly because scanning the chest requires working in proximity to a female patients' breasts" but that Baker's actions "were the same as those performed by female cardiac sonographers." (Doc. 15-2, ¶ 9). Baker states that he was terminated for performing actions and procedures in his field that younger and female employees also performed regularly

4

but were not fired. He filed this lawsuit claiming that his termination was based on his age and his sex.

## Summary Judgment Standard

Summary judgment is appropriate only when the evidence, when viewed in the light most favorable to the nonmoving party, shows that there is no genuine issue of material fact and that the defendant is entitled to entry of judgment as a matter of law. Fed. R. Civ. P. 56; *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The initial burden is on the moving party to demonstrate the absence of a genuine issue of material fact. *Celotex*, at 323. The burden then shifts to the nonmoving party to establish that there is a genuine issue to be determined at trial. *Prudential Ins. Co. v. Hinkel*, 121 F.3d 364, 366 (8th Cir. 1997).

## Sex Discrimination

Baker alleges that he was subjected to sex discrimination pursuant to Title VII of the Civil Rights Act of 1964, Title IX of the Education Amendments of 1972, and the Arkansas Civil Rights Act (ACRA). The Board is correct that that Baker's ACRA claim is barred by Arkansas's sovereign immunity, which Baker did not dispute in his response. The Board also challenges that Baker can bring a Title IX claim for sex discrimination, arguing that Title VII displaces Title IX in the employment context. For the reasons stated in Judge Baker's thorough and well-reasoned opinion in *Hedrick v. Univ. of Arkansas for Med. Scis. by & through Bd. of Trustees of Univ. of Arkansas*, No. 4:18-CV-944-KGB, 2019 WL 4230655 (E.D. Ark. Sept. 5, 2019), the Court agrees that Title IX does not provide a private right of action under these allegations of employment-related sex discrimination. Even if it did, it appears that "the method of evaluating Title IX gender discrimination claims [would be] the same as those in a Title VII case." *Johnson v. Baptist Med. Ctr.*, 97 F.3d 1070, 1072 (8th Cir. 1996) (involving a claim of discrimination in a

conditions-of-employment claim).

Turning then to Baker's Title VII claim of sex discrimination, Baker has offered no direct evidence of sex discrimination. Under the familiar McDonnell Douglas burden-shifting framework, Baker must first establish a prima facie case of sex discrimination. In the usual case, this requires a plaintiff to show "(1) he is a member of a protected class, (2) he met his employer's legitimate expectations, (3) he suffered an adverse employment action, and (4) the circumstances give rise to an inference of discrimination (for example, similarly situated employees outside the protected class were treated differently)."*Lake v. Yellow Transp., Inc.*, 596 F.3d 871, 874 (8th Cir. 2010).  Here, Baker is not a member of a protected class; he is claiming reverse discrimination.  Therefore, to establish a prima facie case of sex discrimination as a male, he is expected to first show "that background circumstances support the suspicion that the defendant is that unusual employer who discriminates against the majority." *Duffy v. Wolle*, 123 F.3d 1026, 1036 (8th Cir. 1997), *abrogated by Torgerson v. City of Rochester*, 643 F.3d 1031 (8th Cir. 2011) (on other grounds) (quoting *Murray v. Thistledown Racing Club, Inc.,* 770 F.2d 63, 67 (6th Cir.1985)). He could show this with evidence that his employer "is inclined to discriminate invidiously against males or something "fishy" about the facts that raises an inference of discrimination." *Woods v. Perry*, 375 F.3d 671, 674 (8th Cir. 2004), *abrogated on different grounds by Torgerson v. City of Rochester*, 643 F.3d 1031 (8th Cir. 2011).

If he establishes a prima facie case, this creates a rebuttable presumption of discrimination, and the burden will then shift to the Board to establish a legitimate, nondiscriminatory reason for his termination.  *Lake* at 873. If established, the burden then shifts back to Baker to establish that the Board's proffered explanation is pretextual. *Anderson v. Durham D & M, L.L.C.*, 606 F.3d 513, 520 (8th Cir. 2010).

First, the Court finds that Baker has not established any background circumstances to support a finding that the Board is the unusual employee who discriminates against the majority. Lord, a female and his direct supervisor, told the investigator that she not heard of any prior complaints of improper behavior by him. He offers no evidence that any other males were subjected to discrimination as he argues he was. Arendall's affidavit stating that in her experience Baker's actions were the same as those performed by female cardiac sonographers is not evidence that UAMS discriminated against its male employees.

Second, the Board asserts that Baker was not meeting his employer's legitimate job expectations because of the complaints against him. However, the record viewed most favorably to Baker is that he was meeting his employer's expectations until the investigation, which he challenges as discriminatory. There were no formal complaints filed against him, and the record reveals no history of disciplinary actions against him other than being required to take additional sexual harassment training two years prior to his termination. The Court will assume he has satisfied this element. There is no dispute that Baker satisfied the third element since he was terminated.

The Court finds that Baker has not established the final element of his prima facie case. "A plaintiff can establish an inference of discrimination in multiple ways, such as by showing more favorable treatment of similarly situated employees who are not in the protected class, biased comments by a decisionmaker, or that the employer failed to follow its own policies or shifted its explanation of the employment decision." *Mayorga v. Marsden Bldg. Maint. LLC*, 55 F.4th 1155, 1162 (8th Cir. 2022) (citation omitted). While the Eighth Circuit has adopted a "low threshold" for establishing that other employees are similarly situated at the prima facie stage." *Wimbley v. Cashion*, 588 F.3d 959, 962 (8th Cir. 2009), Baker has not come forward with any

evidence of similarly situated comparators. He testified that he did not know of *any* other sonographers—male or female—who had faced allegations of sexual harassment or unprofessional conduct, much less who faced such allegations and were treated more favorably than he was. Baker offered no evidence of gender biased comments by a decision maker. The statement by Arendall that she overhead Amundson—a non-decision maker— say "that the only way to get [Baker] out would be to accuse him of sexual harassment" (Doc. No. 15-2 ¶ 5) does not support an inference of discrimination by UAMS. And Baker does not argue that UAMS failed to follow its own policies or changed its reasons for his termination.

Even if he had established a prima facie case, UAMS has overcome the presumption of discrimination with legitimate non-discriminatory reasons for his termination: his behavior had caused staff and students to become uncomfortable, some of his students feared retaliation if they complained, and some of his patient interactions were unprofessional and unsafe. This leaves Baker with the burden of proving these reasons were pretext, which merges with his ultimate burden of persuasion that he was subjected to intentional discrimination based on his sex. *Walker v. First Care Mgmt. Grp., LLC*, 27 F.4th 600, 605 (8th Cir. 2022).

Baker makes two primary arguments to support his claim for sex discrimination. One, he argues that Amundson's complaint to Lord was "laden" with sex discrimination against him. (Doc. No. 16, at 9). He supports this argument by challenging her credibility, saying the two had only worked together for two months, and implying that she only filed a complaint against him when he as manager "failed to make immediate action against a male nurse" she had complained was "not pulling his weight in the lab." (*Id*. at 10). Baker argues that there was nothing unusual about viewing the echocardiograms in a dark room with the students, and he denies ever touching the students on the chest without asking for permission first. Regarding his treatment

8

of the young female patient, he says he had specific medical reasons for putting his fingers in her mouth and "because Baker is an older male. . . Amundson assumed that Baker's intent was predatory and sexual." (*Id.* at 11). Nothing in her complaint against him establishes discriminatory intent on the part of UAMS. Further, while Baker disputes that he engaged in any misconduct, "the central question in determining if termination is proper is not whether the employee actually engaged in prohibited conduct, but whether the employer believed so in good faith." *Rinchuso v. Brookshire Grocery Co.*, 944 F.3d 725, 729–30 (8th Cir. 2019) (citing *McCullough v. Univ. of Ark. for Med. Scis.*, 559 F.3d 855, 861-62 (8th Cir. 2009)).

Secondly, he challenges the way the investigation against him was conducted. Baker argues that Amundson's complaint, the statements from the two female sonographers, and the student's statement were given undue weight over the statements of his female supervisor and two male doctors who not seen or heard of him acting inappropriately. This, he says, clearly shows preferential bias. He argues that the investigation was "flawed and illegal" because he was not given specific information about the allegations against him so he could defend himself properly. He takes issue with the student's written statement, saying she admitted that the touches were "not overtly sexual" and that she never filed a formal complaint. Baker also challenges the investigator's failure to interview two male cardiac sonographers and to include the statement of a male nurse he says was questioned.

These arguments fail to prove that Baker was subjected to intentional discrimination based on his sex. It has long been acknowledged that "the employment-discrimination laws have not vested in the federal courts the authority to sit as super-personnel departments reviewing the wisdom or fairness of the business judgments made by employers, except to the extent that those judgments involve intentional discrimination." *Hutson v. McDonnell Douglas Corp.*, 63 F.3d

9

771, 781 (8th Cir. 1995). Court's do not second guess who an employer decides to interview. "The appropriate scope of investigation is a business judgment, and shortcomings in an investigation do not by themselves support an inference of discrimination." *Wheeler v. Aventis Pharms.,* 360 F.3d 853, 859 (8th Cir.2004). Baker has failed to establish that UAMS purposely "ignored relevant information or otherwise truncated the inquiry because of a bias against men." *Mccullough* at 863. Nor has he established that he was entitled to be given specific information to be able to prepare a defense. As an at-will employee[1], Baker could be fired for "for good cause, no cause, or even a morally wrong cause.'" *Jones v. Wellpath, LLC*, 77 F.4th 658, 663 (8th Cir. 2023) (quoting *Smith v. Am. Greetings Corp.*, 804 S.W.2d 683, 684 (1991)). Baker could have been fired for no reason or based only the complaint of the one sonography student who was brave enough to put in writing the way his behavior her made her feel.[2]

In short, Baker's belief that he was treated differently as a male cardiac sonographer (when he did not produce a single comparator who had been accused of engaging in similar challenged behavior), that his actions were the same as female sonographers who did not receive complaints, and that more interviews would have been favorable to him are not enough to establish pretext or to satisfy his ultimate burden that UAMS discriminated against him because he is male. The Board is entitled to summary judgment on Baker's claim of sex discrimination.

---

[1] Baker has not alleged that he was other than an at-will employee.
[2] This is an excerpt from the student's statement as cited in Defendant's reply (Doc. 19, p. 7): "Chris Baker, took me to a room with the lights off to show me some images from previous echocardiograms. . . . During that hour and a half, he came closer and closer, despite me changing my body language to leaning away from him with my arms crossed and crossing my legs the other way after he touched my foot. During the interaction, he leaned forward to touch me with his hand more than thirty times. . . . He touched my knee, my foot, my shoulder, and my arm several times. I was uncomfortable from the beginning of the conversation and did not smile or encourage his behavior at all. . . . I wanted very much to say something to him about not touching me anymore, but I did not because I was concerned that he would take it the wrong way and that it could impact my clinic evaluations or even my potential for working there in the future."

Age Discrimination

In its motion for summary judgment, the Board challenges that Baker has alleged a cause of action for age discrimination. His complaint references discrimination only under Title VII, but that statute does not recognize age as a protected class. *See* 42 U.S.C. § 2000e–2(a)(1), (2) (prohibiting discrimination on the basis of race, color, religion, sex, or national origin). Baker failed to specifically plead discrimination pursuant to the Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. § 621 *et seq.* Assuming for purposes of ruling on this motion that he does allege a claim under the ADEA, Baker has no more proof of age discrimination than he does of sex discrimination. Ultimately, a plaintiff bringing an ADEA claim "must show that the employer's stated reason [for his termination] was false and that age discrimination was the real reason." *Tusing v. Des Moines Indep. Cmty. Sch. Dist.*, 639 F.3d 507, 516 (8th Cir. 2011). Baker argues that "a reasonable jury could determine that Baker was terminated as the result of a witch-hunt motivated more by gender perceptions of an older male performing certain actions rather than any legitimate complaints against [him]." The Court declines to give a jury the opportunity to so speculate, given the complete absence of evidence that the reason Baker was terminated was pretextual for age discrimination.

Conclusion

For the reasons set forth above, Defendant's motion for summary judgment (Doc. No. 12) is GRANTED. A separate judgment will be entered.

IT IS SO ORDERED this 14th day of March, 2025.

_____
United States District Judge